UNITED STATES OF AMERICA,

        Plaintiff,

        v.

VLADIMIR M GOROKHOVSKY, et al.,

        Defendants.

Case No. 18-cv-0590-bhl

## AMENDED ORDER GRANTING SUMMARY JUDGMENT

In January 2019, the United States filed this action, seeking to reduce federal tax assessments to judgment and foreclose tax liens against Defendant Vladimir Gorokhovsky's real estate. For nearly three years, Gorokhovsky has hamstrung the proceedings through meritless motions, excessive malingering, and bad faith excuses. That ends today. The government has moved for summary judgment, and, because there is no legitimate dispute over the assessment of the taxes owed or the propriety of the tax liens, the motion will be granted.

### FACTUAL BACKGROUND[1]

Between 2003 and 2014, a delegate of the Secretary of the Treasury timely assessed Vladimir Gorokhovsky for outstanding federal income tax liabilities for nine different tax years (2003, 2004, 2006, 2007, 2008, 2010, 2011, 2013, and 2014). (ECF No. 153 at 3-6.) These assessments were based on deficiencies in his reported Form 1040 statements. (*Id.*) For three additional tax years (2012, 2015, and 2016), Gorokhovsky was subject to additional assessments based on his failure to pay his reported tax liabilities. (*Id.* at 7.) Gorokhovsky tried to challenge the assessments for five of these years (2003, 2004, 2006, 2007, and 2008), but the U.S. Tax Court rejected his challenges on each occasion. (*Id.* at 2-4.) Consequently, as of September 30, 2020,

---

[1] No references are made to Defendants' Proposed Finding of Facts (ECF No. 171-3) because proposed facts 1, 2, 4, 5, and 6 do not reference affidavits, declarations, parts of the record, or other supporting materials in violation of Local Rule 56(b)(2)(B)(ii) and Fed. R. Civ. P. 56(c)(1), and proposed fact 3 cites to inadmissible hearsay that cannot be used to substantiate facts at summary judgment. *Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150-51 (7th Cir. 1998).

his personal outstanding federal income tax balance, less credits and penalties discharged in bankruptcy, totaled $425,115.43. (*Id.* at 8.)

To collect on these liabilities, the IRS filed notices of federal tax liens on three different real estate parcels located in Illinois and Wisconsin. It successfully foreclosed its lien against Gorokhovsky's property on Huron Street in Chicago, Illinois (the Huron Property) while this lawsuit was pending. (*Id.* at 21); (ECF No. 155-32) (entering default judgment in favor of the United States and against Gorokhovsky). Thus, as of September 30, 2020, and after accounting for the foreclosure proceeds, the outstanding balance, including interest, subject to the two remaining liens totaled $538,749.37. (ECF No. 153 at 10.)

These remaining liens were filed against real estate parcels located in Wisconsin—one at 10910 N. Hedgewood Lane, Mequon, Wisconsin (the Mequon Property), the other at 4275 W. Cherrywood Lane, Brown Deer, Wisconsin (the Brown Deer Property). (*Id.* at 15, 19.) Gorokhovsky does not currently hold title to either property, but there is more to the story.

The Mequon Property is held in the name of Gorokhovsky's ex-wife, Larissa Ocheretner. (*Id.* at 12.) Title was transferred to her by warranty deed on July 28, 2005, just months before the two were married. (*Id.* at 11.) When the couple later divorced in February 2011, Gorokhovsky was awarded all right, title, and interest in the Mequon Property. (*Id.*) The divorce decree obligated him to prepare a quitclaim deed for Ocheretner to sign to effectuate the property's transfer, but he never did. (*Id.* at 12.) The Mequon Property appears to be Gorokhovsky's personal residence. (*Id.* at 13.) From at least 2008 to 2017, he listed it as his home address on his personal federal income tax returns. (*Id.*) At times, he pays the mortgage on the property with funds from his law firm bank account. (*Id.* at 15.) During his 2017 bankruptcy, he stated, under penalty of perjury, that he owned the property in fee simple. (*Id.* at 13-14.) During a requested Rule 34 inspection, Gorokhovsky provided access to the property, which contained his personal items as well as a bedroom he referred to as "his." (*Id.* at 14.)

Title to the Brown Deer Property is held by Gorokhovsky Imports and Investment Group (GIIG), a defunct limited liability company owned and controlled by Gorokhovsky. (*Id.* at 17.) Gorokhovsky purchased the Brown Deer Property in October 1997. (*Id.* at 16.) In May 2005, by quitclaim deed and for no consideration, Gorokhovsky transferred title to the Brown Deer Property to GIIG. (*Id.*) Gorokhovsky was GIIG's sole officer, director, principle, owner, employee, and registered agent. (*Id.*) GIIG was administratively dissolved in 2014. (*Id.* at 17.) Gorokhovsky's

2011 divorce decree awarded him all right, title, and interest in the Brown Deer Property. (*Id.*) Despite the award and GIIG's dissolution, the property remains titled in GIIG's name. (*Id.*) Since at least 2005, Gorokhovsky or an immediate family member has occupied and paid all expenses associated with the Brown Deer Property. (*Id.* at 17-18.) During his 2017 bankruptcy, Gorokhovsky swore, under penalty of perjury, that he owned the Brown Deer Property in fee simple. (*Id.* at 18.) During a Rule 34 inspection of the property, Gorokhovsky provided access and collected the mail, and the home was filled with his personal belongings. (*Id.* at 19.) Gorokhovsky also conceded that his five pet cats lived at both the Mequon and Brown Deer Properties. (*Id.*)

On September 8, 2017, Gorokhovsky filed a chapter 7 bankruptcy petition with the U.S. Bankruptcy Court for the Eastern District of Wisconsin. (*Id.* at 10.) On June 20, 2018, he received a discharge. (*Id.* at 11.)

## SUMMARY JUDGMENT STANDARD

"Summary Judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## ANALYSIS

The government moves for summary judgment on three counts of its complaint. The first count seeks to reduce its federal tax assessments to judgment. The second and third counts seek to foreclose federal tax liens against the Mequon and Brown Deer Properties and declare that Larissa Ocheretner and GIIG hold those properties as Gorokhovsky's nominees. The record contains no genuine issues of material fact, so the Court will grant Plaintiff's motion on each count.

## I. The Undisputed Facts Establish that Gorokhovsky's Outstanding Federal Income Tax Liabilities Total $425,115.43, Plus Statutory Interest.

To reduce its federal tax assessments to judgment, the United States must show that those tax assessments were valid and correct and not discharged through Gorokhovsky's 2017 bankruptcy. Because Gorokhovsky has not come forward with evidence sufficient to rebut the presumption that the government assessments were correct, and the record shows a substantial portion of his tax debt survived his bankruptcy, summary judgment will be granted.

### A. The Federal Tax Assessments Against Gorokhovsky Are Presumed Valid.

"It is well established in the tax law that an assessment is entitled to a legal presumption of correctness." *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002). "Once the United States has come forward with evidence that federal tax assessments have been made and that balances are due with respect to those assessments, there is *prima facie* proof that taxes are owing." *United States v. Troyer*, No. 91-3560, 1992 WL 382378, at *5 (7th Cir. Dec. 16, 1992). At that point, "[t]he taxpayer has the burden to show an assessment is incorrect." *Avco Delta Corp. Canada Ltd. v. United States*, 540 F.2d 258, 262 (7th Cir. 1976).

The United States has carried its burden by submitting certified Form 4340 statements for each tax year at issue. (ECF No. 156, Exs. 1-12.) A certified Form 4340 is evidence of valid assessment and proper notice. *See Troyer*, 1992 WL 382378, at *5 (finding 4340 statements "suffice to warrant a presumption of the validity of the IRS's assessments"); *United States v. McCarville*, No. 01-C-787, 2003 WL 22327931, at *7 (E.D. Wis. Aug. 21, 2003) ("[Form 4340 statements] carry a presumption of validity and are sufficient evidence to show that assessments were made against a taxpayer, in accordance with statutory and regulatory requirements."). According to the government's sworn declarations, the total balance due on Gorokhovsky's assessments, as of September 30, 2020, is $425,115.43. (ECF No. 153 at 8.) This sum includes interest and statutory additions and also accounts for payments and credits, including the proceeds of the foreclosure on the Illinois property. (*Id.*)

Gorokhovsky has not submitted evidence or legal authority to challenge the validity of the Form 4340 statements. Much of this failure is the consequence of his misconduct in discovery. Despite a December 20, 2019 discovery order, Gorokhovsky refused to identify documents in response to interrogatories, refused to fully answer interrogatories, improperly promised to produce documents at some time in the future, failed to undertake and document good faith efforts

to obtain responsive documents from nonparties when ordered to do so, and failed to appear for his properly noticed remote deposition. (ECF No. 142 at 8.) Similarly, GIIG, and its counsel and co-defendant Gorokhovsky, failed to comply with the December 20, 2019 discovery order and failed to appear for a properly noticed remote deposition. (*Id.* at 10-11.) As a result, on September 1, 2020, Magistrate Judge William E. Duffin sanctioned Gorokhovsky and GIIG for "willful, dilatory, bad faith, and unreasonable conduct." (*Id.* at 9.) Having obstructed the government's efforts to obtain discovery on its claims, Gorokhovsky and his company are barred from presenting contradictory evidence. Hence, the sanctions order prohibits Gorokhovsky from introducing evidence and/or testimony on four matters that he refused to cooperatively engage in during discovery: the correct amount of the United States' federal income tax assessments against him; the validity or timeliness of the United States' federal income tax liens; the ownership of the real property located in Mequon; and the ownership of the real property located in Brown Deer. (*Id.* at 9-10.) The sanctions order further prohibits GIIG from introducing evidence and/or testimony on two matters: allegations that Michael Gorokhovsky may have an interest in, may have contributed funds towards the purchase of, or may be the true owner of the Brown Deer Property; and allegations that Andrei Malachin may have an interest in, may have contributed funds towards the purchase of; or may have entered into any agreements or loan agreements regarding the Brown Deer Property. (*Id.* at 11-12.) Accordingly, Gorokhovsky may not challenge the government's evidence "regarding the correct amount of the United States federal income tax assessments against him." (ECF No. 142 at 9.) Thus, he cannot rebut the government's prima facie case as to the extent of his tax liabilities.

### B. Gorokhovsky's Attempts to Dispute His Tax Liabilities Fail as a Matter of Law.

Gorokhovsky insists summary judgment is improper because there are two material factual disputes concerning the amount of his tax liabilities. First, he argues that the government has failed to credit him for the proceeds of its foreclosure on the Huron Property. (ECF No. 171 at 7.) Second, he insists that his 2017 bankruptcy discharged some or all of his federal tax liabilities. (*Id.* at 9-10.) While Judge Duffin's sanctions order seriously restricted the universe of legal arguments and affirmative defenses available to Gorokhovsky, it did not prevent him from making either of these arguments. Nonetheless, Gorokhovsky fails to create an issue of material fact; neither argument is properly supported by admissible evidence. Gorokhovsky relies exclusively on self-serving and conclusory statements from his own declaration, and the government has

produced evidence that roundly refutes both of his claims. Accordingly, summary judgment on Count I of the complaint is appropriate.

### 1. The United States Accounted for the Proceeds from the Sale of the Huron Property When Calculating Gorokhovsky's Current Tax Indebtedness.

Gorokhovsky argues that the sale of his Huron Property located in Illinois produced $150,000, which the government failed to offset when calculating his indebtedness in this case. (ECF No. 171 at 7.) Based on the record before the Court, this appears to be pure fiction. The First Amended Order Authorizing Sale, filed at ECF No. 100 in *United States v. Gorokhovsky, et al.*, Case No. 18-cv-3469 (N.D. Ill.), plainly states that the Huron Property sold for $265,000, of which the U.S. received $10,000. (ECF No. 174 at 18 n.12.) A credit of this $10,000 (plus interest) was included in the government's calculations of Gorokhovsky's outstanding tax liabilities. (ECF No. 156 ¶10(d)(iv).) There is no dispute of material fact here, only a dispute between fact and fiction. That will not suffice to survive summary judgment. *See Seshardi v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) (at summary judgment "testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it").

### 2. Most of Gorokhovsky's Tax Liabilities Were Excluded from his Bankruptcy Discharge.

Gorokhovsky also claims that a genuine issue of material fact exists over what portion of his tax liabilities were discharged in his 2017 bankruptcy. (ECF No. 171 at 9-12.) In particular, he argues that the government cannot show, as a matter of law, that he willfully evaded his liabilities, a necessary precondition to proving his pre-2013 liabilities nondischargeable.

The government concedes that some of the tax penalties assessed against Gorokhovsky prior to his bankruptcy were discharged. (ECF No. 154 at 18 n.8, 21.) Section 523(a)(7)(B) of the Bankruptcy Code provides for the discharge of an individual's exposure with respect to tax penalties imposed on "a transaction or event that occurred before three years before the date of the filing of the petition." Gorokhovsky filed his 2003 through 2012 tax returns in or before 2013, more than three years before his September 8, 2017 bankruptcy petition. (ECF No. 153 at 11.) Thus, pursuant to 11 U.S.C. §523(a)(7)(B), Gorokhovsky's bankruptcy discharged any tax penalties assessed against Gorokhovsky personally for tax years 2003 through 2012. (*Id.*)

The Government insists, however, that the balance of Gorokhovsky's tax liabilities were not affected by his discharge. With respect to Gorokhovsky's tax debts from tax years 2013

through 2016, the Government cites 11 U.S.C. §523(a)(1)(A). Under this provision, certain priority claims, including tax debts associated with tax returns due within three years prior to the date the bankruptcy petition was filed, are not discharged. *See, e.g., Young v. United States*, 535 U.S. 43, 45 (2002). Further, unless the debtor chooses to divide his tax year into two short taxable periods under 26 U.S.C. §1398, tax returns filed after the bankruptcy petition do not become part of the bankruptcy estate and are only collectible from the individual. *See In re Turboff*, 93 B.R. 523, 525-26 (Bankr. S.D. Tex. 1988); *Moore v. IRS*, 132 B.R. 533, 534-35 (Bankr. W.D. Pa. 1991). Because Gorokhovsky's 2013 through 2015 tax filings were due within three years prior to the date of his bankruptcy petition, (ECF No. 153 at 10-11), the debts and corresponding penalties for those tax years were not discharged. Additionally, since Gorokhovsky did not elect to divide his 2016 tax year via §1398, and he filed his 2016 returns on October 16, 2017—after he filed his bankruptcy petition—none of his 2016 liability was discharged in bankruptcy either. (*Id.* at 11.)

As to the balance of Gorokhovsky's 2003-2012 tax liabilities, the Government argues that his willful tax evasion renders the assessments and interest associated with those years nondischargeable. "[T]he well-recognized underlying policy of 11 U.S.C. §523(a)(1)(C) is to limit discharge to the honest but unfortunate debtor." *In re Dagostini*, 482 B.R. 597, 602 (Bankr. E.D. Wis. 2012). As a result, debtors may not discharge any tax debt they "willfully attempted in any manner to evade or defeat[.]" *Id.* at 600. Under Seventh Circuit law, a finding of willful evasion requires two elements: conduct "(that the debtor sought 'in any manner to evade or defeat' his tax liability)" and mental state "(that the debtor did so 'willfully')." *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir. 1996).

To satisfy the conduct element, the government must show a debtor's nonpayment coupled with evidence of "other measures to conceal assets or income." *Id.* at 951-52 ("nonpayment of tax alone is not sufficient to bar discharge of a tax liability"). When looking for "other measures to conceal assets or income," courts consider the totality of the circumstances and a wide range of conduct, including but not limited to: direct concealment of income or assets; fraudulent transfers or intra-family transfers for inadequate consideration; conducting business affairs in a way that makes finding, tracking, or levying on income difficult; consistent understatement of income; implausible or inconsistent behavior; failure to cooperate with taxing authorities; failure to cooperate in discovery; making discretionary purchases rather than paying liabilities; making misrepresentations to the IRS or the Court; and inadequate recordkeeping. *Id.*; *In re Fegeley*, 118

F.3d 979, 983-84 (3d Cir. 1997); *Dalton v. IRS*, 77 F.3d 1297, 1302-03 (10th Cir. 1996); *In re Feshbach*, 974 F.3d 1320, 1326 (11th Cir. 2020); *see also In re Geiger*, 408 B.R. 788, 791 (C.D. Ill. 2009); *In re Terrell*, 594 B.R. 792, 820 (Bankr. W.D. Okla. 2018).

The undisputed facts suggest Gorokhovsky treated this catalog of evasive conduct factors as a checklist. Indeed, there are at least nine independent grounds sufficient to satisfy the evasive conduct element:

- He transferred his Brown Deer Property to GIIG for no consideration while he continued to control the property, pay its expenses, and hold himself out as the owner. (ECF No. 153 at 16); *see In re Birkenstock*, 87 F.3d at 949 (finding conduct element satisfied when debtor transferred property to a trust for no consideration and continued to reside in the property).

- He failed to transfer title to the Mequon Property out of his ex-wife's name despite *holding* himself out as the owner and enjoying beneficial ownership. (ECF No. 153 at 12-13); *see In re Mitchell*, 633 F.3d 1319, 1329 (11th Cir. 2011) (finding conduct satisfied when taxpayer purchased home in his wife's name while he resided there and paid the mortgage).

- He took inconsistent positions by denying ownership of the Mequon and Brown Deer *Properties* in litigation while admitting ownership and control of the properties in his bankruptcy and tax filings. (ECF No. 153 at 14, 18); *see In re Sommers*, 209 B.R. 471, 480 (Bankr. N.D. Ill. 1997) (finding inconsistent explanations in different legal proceedings indicative of evasive conduct).

- He consistently understated his income. Despite a February 2013 Tax Court *Opinion* informing Gorokhovsky that he could not claim unsubstantiated deductions, he continued to deduct substantial business expenses, year-over-year, without maintaining any records. (ECF No. 153 at 22-23); *see In re Obinawa*, No. 6:11-bk-08951, 2012 WL 5555715, at *2 (Bankr. M.D. Fla. Nov. 13, 2012) (finding evasive conduct when debtor continued to take impermissible deductions, including business expenses, when he knew he was not entitled to do so).

- He maintained inadequate records of his income and the income of his business. (ECF No. 153 at 22); *see In re Claxton*, 335 B.R. 680, 689 (Bankr. N.D. Ill. 2006) (finding conduct satisfied where debtor did not maintain records of all income received from business).

- He organized his finances to make finding, tracking, and levying on his income more difficult. He never maintained a personal bank account, and he pays for *personal* expenses out of his law firm accounts. (ECF No. 153 at 24-25.) Coupled with his aversion to maintaining accurate financial records, this comingling of funds makes identifying taxable income incredibly cumbersome. *See In re Klayman*, 333 B.R. 695, 702-03 (Bankr. E.D. Pa. 2005) (finding conduct satisfied where the taxpayer

- maintained no personal checking account and used the business he controlled to pay personal expenses).

- He failed to cooperate during discovery in this case. To obtain the evidence and information to which it was entitled, the United States had to rely on Rule 37 sanctions and Orders to Compel initial disclosures. (ECF No. 153 at 27); *see In re Terrell*, 594 B.R. at 824 (finding evasive conduct when taxpayer resisted discovery and forced the U.S. to obtain an order compelling cooperation). Further, Gorokhovsky baselessly opposed the United States' Rule 34 request to inspect the Mequon and Brown Deer Properties. (ECF No. 153 at 26-27); *see In re Gillis*, 251 B.R. 920, 922-23 (Bankr. S.D. Ga. 2000) ("when [taxpayer] refused to allow [IRS agent] to enter premises to execute the levy . . . he engaged in an affirmative act that constituted an attempt to defeat payment of his taxes").

- He also failed to cooperate with the IRS in the examination of his federal income tax liabilities. (ECF No. 153 at 5.) The IRS undertook an examination of Gorokhovsky's self-filed returns for tax years 2010, 2011, 2013, and 2014. (*Id.*) He refused to provide substantiation for his claimed deductions and did not appear at any scheduled appointments. (*Id.*); *see In re Peterson*, 317 B.R. 556, 565 (Bankr. N.D. Ga. 2004) (finding conduct satisfied where taxpayer failed to provide information to IRS agent during offer in compromise negotiations).

- While he knew of his extensive tax liabilities, Gorokhovsky continued to make discretionary purchases. (ECF No. 153 at 25-26.) Since 2003, he has put exactly $0 toward paying down his outstanding taxes. (*Id.* at 28.) In that same time, he has spent over $15,000 on cigars and cigar paraphernalia (*Id.* at 26), over $19,000 on travel-related expenses (*Id.*), and $3,000 on toys. (*Id.* at 25); *see In re Terrell*, 594 B.R. at 821 (noting that lavish spending in the face of outstanding tax obligations constitutes evasion).

This mosaic of evasion confirms beyond doubt that Gorokhovsky did more than simply fail to pay taxes, he actively avoided them. No rational finder of fact could conclude otherwise.

To satisfy the mental state element, the government must show a debtor acted "willfully" by demonstrating that he (1) knew he had a duty under the tax law and (2) voluntarily and intentionally attempted to violate that duty. *In re Birkenstock*, 87 F.3d at 952. Notably, "willfulness" requires "voluntary, conscious, and intentional" behavior, *In re Toti*, 24 F.3d 806, 808 (6th Cir. 1994), but the "special definition of 'willfully' for criminal tax statutes is not required in applying civil tax statutes." *Domanus v. United States*, 961 F.2d 1323, 1326 (7th Cir. 1992). Courts have found the presence of "badges of fraud" sufficient to prove intention to violate a known duty. *In re Jacobs*, 490 F.3d 913, 920 (11th Cir. 2007); *In re Berzon*, 145 B.R. 247, 250 (Bankr. N.D. Ill. 1992); *see In re Geiger*, 408 B.R. at 791 (finding "the presence of multiple [fraud]

factors can give rise to a rebuttable presumption of willful evasion"). As with evasion, willfulness is evaluated in light of the totality of the circumstances, considering factors like:

> (1) recurrent understating income; (2) maintaining inadequate records; (3) failing to file tax returns; (4) giving implausible or inconsistent explanations of behavior; (5) concealing assets; (6) failing to cooperate with tax authorities; (7) engaging in illegal activities; (8) attempting to conceal illegal activities; (9) dealing in cash; (10) failing to make estimated tax payments; (11) transferring assets to family members; (12) transferring assets for insufficient consideration; (13) transfers that greatly reduced assets subject to IRS execution; and (14) transfers in the face of serious financial difficulties.

*In re Geiger*, 408 B.R. at 791.

Gorokhovsky's knowledge of his duty to pay taxes is readily inferred from his credentials and behavior. From 2003 to 2017, he regularly filed tax returns containing his reported taxable income. (ECF No. 153 at 2.) On multiple occasions, he took steps to contest his assessed liabilities in Tax Court. (*Id.* at 2-4.) He retained an accountant to aid him in preparing his returns from at least 2008 to the present. (ECF No. 155, Exs. 22-33.) He is an attorney who operates his own law firm. *See In re Bernstein*, No. 15-33303, 2017 WL 3314242, at *7 (Bankr. D.N.J. June 6, 2017) (finding taxpayer with experience running a business was sophisticated enough "to know of a duty to file a tax return and to be truthful about the amount of income"). In short, given his actions and level of sophistication, Gorokhovsky cannot plausibly deny awareness of his duty to report his income and pay taxes. *See In re Crawley*, 244 B.R. 121, 129 (Bankr. N.D. Ill. 2000) (finding a pattern of compliance, in filing tax returns, exhibited awareness); *In re Claxton*, 335 B.R. at 687 (finding sophisticated businessman who made some payments to the IRS and then stopped was aware he had a duty to file and pay taxes); *In re Bruner*, 55 F.3d 195, 199 (5th Cir. 1995) (finding that filing returns was sufficient evidence of knowledge of a duty).

Further, Gorokhovsky's conduct is replete with badges of fraud. He understated his income through unsubstantiated deductions (ECF No. 153 at 23); failed to make estimated tax payments on his 2012, 2015, and 2016 tax returns (*Id.* at 7); took inconsistent positions in disclaiming and claiming ownership of real property (*Id.* at 14, 18); failed to cooperate with the IRS in its examination of his liabilities (*Id.* at 5) and the United States in discovery (*Id.* at 27); transferred assets for no consideration to an LLC he alone controlled (*Id.* at 16); left other assets in the name of his ex-wife after being awarded title in their divorce (*Id.* at 12); and maintains no records of his personal or business finances (*Id.* at 22).

The Seventh Circuit upheld a finding of willful evasion in a case with similar facts. *In re Zuhone*, 88 F.3d 469, 473 (7th Cir. 1996). There, the plaintiffs repeatedly transferred and purchased property in the names of nominees and paid off undue loans and other expenses while failing to pay their tax debts. *Id.* at 472. The Court held that the record of conduct "'crie[d] out' with evidence to support" a finding of nondischargeability. *Id.* at 473. If that record cried, this one shrieks. The evidence leaves no doubt that Gorokhovsky knew of his federal tax obligations and took intentional steps to avoid paying them. Accordingly, none of the 2003 through 2012 tax assessments or associated interest was dischargeable in bankruptcy. It is therefore undisputed that, as of September 30, 2020, Gorokhovsky was personally liable for $425,115.43 in outstanding federal income tax, plus statutory interest and other accruing additions. (ECF No. 153 at 8.)

## II. The Federal Tax Liens are Valid and Enforceable Against the Mequon and Brown Deer Properties.

In Counts II and III of the complaint, the government seeks to enforce its tax liens on the Mequon and Brown Deer Properties. Gorokhovsky does not hold formal title to either piece of real estate. This is not dispositive. It is well-established that federal tax liens under 26 U.S.C. §6321 are broad and reach every property interest belonging to a taxpayer. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). They specifically attach to a taxpayer's property even when the property is titled in the name of a nominee of the taxpayer. *United States v. Wesselman*, 406 F. App'x 64, 65 (7th Cir. 2010). Accordingly, a federal tax lien may be enforced against property to which the taxpayer enjoys the benefits of ownership without holding bare legal title. *Macklin v. United States*, 300 F.3d 814, 818 n.2 (7th Cir. 2002). To foreclose federal tax liens against those properties, the United States must show that the actual titleholders are mere nominees. Because the undisputed facts reveal that Gorokhovsky enjoys the benefits of both the Mequon and Brown Deer Properties, his lack of legal title is no barrier to summary judgment.

### A. Ocheretner Holds the Mequon Property as a Nominee, and Gorokhovsky is the True Beneficial Owner.

"Federal courts must look to state law to determine the taxpayer's ownership interest in . . . property, including the question whether the titleholder is merely a nominee." *United States v. Bogart*, 715 F. App'x 161, 166 (3d Cir. 2017). Wisconsin law contemplates individuals with interest in a property without bare legal title. *See Republic Bank of Chi. v. Lichosyt*, 736 N.W.2d 153, 159-60 (Ct. App. Wis. 2007). And federal courts in Wisconsin have applied federal nominee

tax law factors to determine whether federal tax liens may be enforced against the property interests of taxpayers who do not have bare legal title. *See United States v. Bannister*, No. 02-C-075-S, 2002 WL 31360657, at *3 (W.D. Wis. Aug. 7, 2002); *Macklin v. United States*, No. 01-CV-548, 2002 WL 31360650, at *1 (E.D. Wis. Sept. 4, 2002). The federal nominee tax law factors include, but are not limited to: whether the taxpayer exercises dominion or control over the property; whether the nominee paid little or no consideration for the property; whether the taxpayer placed the property in the nominee's name in anticipation of liability or lawsuit; whether there is a close relationship between the taxpayer and the nominee; whether the taxpayer failed to record the conveyance; whether the taxpayer retained possession; and whether the taxpayer enjoys the benefits of the property while titled in the nominee's name. *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1070-71 (9th Cir. 2013); *Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005); *Dalton v. Comm'r of Internal Revenue*, 682 F.3d 149, 158 (1st Cir. 2012); *Bannister*, 2002 WL 31360657, *2. Other nominee factors include whether the taxpayer expends personal funds on the property while titled in the nominee's name and whether the taxpayer has held himself out to the be the owner of the property or treats the property as his own. *United States v. Olsen*, No. 98C2170, 2002 WL 575744, at *2 (N.D. Ill. March 28, 2002); *Sumpter v. United States*, 302 F. Supp. 2d 707, 721 (E.D. Mich. 2004).

Determining ownership of the Mequon Property is not difficult. It is undisputed that Larissa Ocheretner holds technical legal title to the Mequon Property, but that is the extent of her interest. A review of the nominee factors reveals that Gorokhovsky is the true owner.

Gorokhovsky's control over the Mequon Property is undisputed. He also represented to his creditors and the Bankruptcy Court, under penalty of perjury, that he owned the property in fee simple. (ECF No. 153 at 14.) He holds himself out as the owner and lives in the property. (*Id.* at 13.) He listed it as his personal address on his personal tax returns and bankruptcy schedules. (*Id.* at 13-14.) He personally filed an opposition seeking to bar the United States from inspecting the Mequon Property in this case. (*Id.* at 14.) He enjoys the benefits of the property; it is where he lives, sleeps, and smokes cigars. (*Id.* at 13, 25). He operates his law firm out of the basement. (*Id.* at 13.) And he stores his personal belongings on the premises. (*Id.* at 14.) He has a close relationship with the nominee. Gorokhovsky and Ocheretner were married for six years, and they lived together at the Mequon Property during that time. (*Id.* at 11-13.) When they divorced, Gorokhovsky received all right, title, and interest in the home, but he refused to record a

conveyance of title in contravention of the divorce decree's order. (*Id.* at 12.) Despite this, Gorokhovsky alone pays the expenses to maintain the property. The mortgage payments, when made, have at times come directly from his law firm bank account. (*Id.* at 15.)

Notably, even Ocheretner admits that Gorokhovsky is the true owner of the Mequon Property. (*Id.* at 11-12.) No reasonable factfinder could reach an alternative conclusion, especially considering that Gorokhovsky is prohibited from introducing evidence or testimony in support of allegations or affirmative defenses regarding the ownership of the Mequon Property. (ECF No. 142 at 9.) Thus, there is no debate; the United States can foreclose its tax liens against the Mequon Property.

### B. Gorokhovsky Is Also the True Beneficial Owner of the Brown Deer Property; GIIG Is a Nominee.

As with the Mequon Property, Gorokhovsky does not hold bare legal title to the Brown Deer Property. Once again, though, it is indisputable that the titleholder (GIIG) is a mere nominee, and Gorokhovsky is the true owner of the property. His behavior throughout this litigation proves as much. He opposed Rule 34 inspection of the property, telling the Court that he "occup[ies]" it. (ECF No. 153 at 17.) When the Rule 34 inspection did take place, he personally provided access (and collected the mail). (*Id.* at 19.)

He also holds himself out as the owner. Brown Deer Village tax records list him as the owner. (*Id.*) He declared under penalty of perjury that he owned the property in fee simple. (*Id.* at 18.) And he was awarded all right, title, and interest in the property through his 2011 divorce with Ocheretner. (*Id.* at 17.) He enjoys the benefits of the property. He occupies it, keeps many personal belongings on the premises, and, at times, allows his five pet cats to live there. (*Id.* at 17-19.) He has a close relationship with the nominee. Indeed, functionally, he *is* the nominee—Gorokhovsky formed GIIG and was its registered agent and sole representative. (*Id.* at 16.) He expends personal funds on the property. Since at least 2005, either Gorokhovsky or an immediate family member has paid expenses associated with the Brown Deer Property. (*Id.* at 18.)

GIIG does not even allege any ownership interest in the property. (ECF No. 154 at 19.) Furthermore, both Gorokhovsky and GIIG are prohibited from introducing any evidence or testimony in support of allegations or affirmative defenses regarding the ownership of the Brown Deer Property. (ECF No. 142 at 9, 11-12.) Under the circumstances, no trier of fact could

conclude that GIIG is anything besides Gorokhovsky's nominee. Thus, the United States can effectuate its federal tax liens against the Brown Deer Property.

## CONCLUSION

For the past two decades, Vladimir Gorokhovsky has seriously challenged the notion that nothing is certain but death and taxes. He has employed every conceivable tactic (and not a few that were wholly inconceivable) to delay the inevitable. Ultimately, though, the old adage prevails. Accordingly,

**IT IS HEREBY ORDERED AND ADJUDGED** that Plaintiff's motion for summary judgment (ECF No. 152) is **GRANTED**.

1. On Count I of Plaintiff's Complaint, judgment shall be entered in favor of the United States and against Vladimir Gorokhovsky as follows:
    a. The United States' federal income tax assessments are valid.
    b. As of September 30, 2020, Gorokhovsky is personally liable for $425,115.43, plus statutory interest and additions accruing until the judgment is paid in full.
2. On Count II of Plaintiff's Complaint, judgment shall be entered in favor of the United States and against Vladimir Gorokhovsky and Larissa Ocheretner as follows:
    a. The United States federal tax liens associated with Gorokhovsky's unpaid federal tax liabilities are valid and subsisting liens that attached to the real property located at 10910 N. Hedgewood Lane, Mequon Wisconsin (the Mequon Property) as of the dates of the assessments made against him.
    b. Gorokhovsky is the true beneficial owner of the Mequon Property, and the United States' federal tax liens attach to Gorokhovsky's interest in the Property.
    c. Defendant Larissa Ocheretner holds bare legal title to the Mequon Property as Gorokhovsky's nominee.
    d. As Gorokhovsky's nominee, Ocheretner has no rights, claims, or interest in the Mequon Property, or to the proceeds from the sale of the Property.
    e. The federal tax liens are enforced against the Property.
    f. The Property shall be sold pursuant to a separate order of this Court.

    g.   The net receipts from the sale shall be applied to satisfy, in part, Gorokhovsky's unpaid federal tax liabilities.

3. On Count III of Plaintiff's Complaint, judgment shall be entered in favor of the United States and against Vladimir Gorokhovsky and Gorokhovsky Imports and Investment Group LLC as follows:

    a. The United States federal tax liens associated with Gorokhovsky's unpaid federal tax liabilities are valid and subsisting liens that attached to the real property located at 4275 W. Cherrywood Lane, Brown Deer, Wisconsin (the Brown Deer Property) as of the dates of the assessments made against him.

    b. Gorokhovsky is the true beneficial owner of the Brown Deer Property, and the United States' federal tax liens attach to Gorokhovsky's interest in the Property.

    c. Defendant Gorokhovsky Imports and Investment Group LLC holds bare legal title to the Brown Deer Property as Gorokhovsky's nominee.

    d. As Gorokhovsky's nominee, Gorokhovsky Imports and Investment Group LLC has no rights, claims, or interest in the Brown Deer Property, or to the proceeds from the sale of the Property.

    e. The federal tax liens are enforced against the Property.

    f. The Property shall be sold pursuant to a separate order of this Court.

    g. The net receipts from the sale shall be applied to satisfy, in part, Gorokhovsky's unpaid federal tax liabilities.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on December 10, 2021.

                                                      s/ *Brett H. Ludwig*
                                                      BRETT H. LUDWIG
                                                      United States District Judge