UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

          Plaintiff,

v.

          Case No. 18-cv-0590-bhl

VLADIMIR M GOROKHOVSKY, et al.,

          Defendants.

---

## ORDER OF SALE OF MEQUON PROPERTY AND APPOINTMENT OF RECEIVER

---

      The United States filed this case in January 2019, seeking to reduce federal tax assessments to judgment and foreclose tax liens against Vladimir Gorokhovsky's real estate. (ECF No. 1.) On December 22, 2021, the Court entered a final *in rem* judgment—against all Defendants and in favor of the United States—enforcing the aforementioned federal tax liens against the real properties located at 10919 N. Hedgewood Lane, Mequon, Wisconsin (the Mequon Property) and 4275 Cherrywood Lane, Brown Deer, Wisconsin (the Brown Deer Property). (ECF No. 218.) The judgment directed that the properties be sold subject to further order of the Court. (*Id.* at 2-3.) On February 7, 2022, the United States filed a motion seeking an order of sale and order appointing a receiver with respect to the Mequon Property. (ECF No. 219.)[1] That same day, Gorokhovsky responded, objecting to the appointment of a receiver and asking to be allowed to sell the Mequon Property himself. (ECF No. 222.)

---

[1] The Brown Deer Property is currently in a state of disrepair. (*See generally*, ECF No. 221.) For that reason, at this time, the United States has not sought entry of an order of sale or order appointing a receiver with respect to that property. (ECF No. 219 at 2.)

Under 26 U.S.C. Section 7403, the Court may, at the instance of the United States, appoint a receiver to enforce federal tax liens. 26 U.S.C. §7403(d). Once the United States' lien interest has been established, a federal district court has "broad authority . . . to order the sale of the property and to appoint receivers." *Wilmington Savings Fund Society, FSB v. Cosmano*, 2022 WL 160286, at *5 (N.D. Ill. Jan. 18, 2022). In addition, "[t]he appointment of a receiver is an especially appropriate remedy in cases involving fraud and the possible dissipation of assets." *In re McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994).

Gorokhovsky insists that he will be able to sell the Mequon Property for greater value than proposed receiver Peter Gohsman. (ECF No. 222 at 3-4.) His opinion might carry more weight with the Court had he not conducted so much of this litigation in bad faith. (*See e.g.* ECF Nos. 142 & 192.) This history aside, there can be no debate over whether Gohsman or Gorokhovsky is best positioned to sell the Mequon Property. Gohsman is a licensed Milwaukee area realtor with decades of experience. (ECF No. 225 at 6.) Gorokhovsky is not a real estate professional and, within the last two years, has treated his properties in Chicago and Brown Deer so poorly as to render them virtually uninhabitable. (*Id.* at 6-7.) A debtor who has a history of fraud, tax evasion, and asset dissipation is not fit to maximize the return on a real estate transaction. *See McGaughey*, 24 F.3d at 908. Therefore, the Court will order sale of the Mequon Property and appoint Gohsman as receiver.

Accordingly,

**IT IS HEREBY ORDERED** that the United States' motion for an order of sale and appointment of a receiver (ECF No. 219) is **GRANTED**.

**IT IS FURTHER ORDERED THAT:**

1. Peter Gohsman, of the Gohsman Group of Keller Williams Realty – Milwaukee North Shore, located in Whitefish Bay, Wisconsin, is appointed as Receiver for the purposes of assisting in the enforcement of the federal tax liens against the Mequon Property pursuant

to 26 U.S.C. §§ 7402(a) and 7403(d) and is directed to take custody and arrange for the sale of the property that is subject of Count II of the United States' Second Amended Complaint, referred to herein as the Mequon Property, with the address 10919 N. Hedgewood Lane, Mequon, Wisconsin, and the following legal description:

> Lot 16, of Block 5, in Scenic Heights Plat No. 1, located in the Northwest 1/4 of Section 25 in Township 9 North, Range 21 East, in the City of Mequon, Ozaukee County, Wisconsin.

2. The Receiver is directed to arrange for the sale of the Property free and clear of any rights, titles, claims, or interests of any of the parties to this action.

3. The Receiver shall have the authority to promote and advertise the Property as the Receiver deems appropriate, including but not limited to (i) displaying signs on the Property, (ii) placing the Property in any multiple listing service in which the Receiver participates, (iii) promoting the Property on the Receiver's internet website and/or through any other advertising medium which Receiver may subscribe to or otherwise use, and (iv) releasing information as to the amount of the selling price, type of financing, and number of days to sell this Property to any multiple listing service in which the Receiver participates at the time a sale is completed.

4. The Receiver shall have the authority to arrange for the sale of the Property, subject to confirmation by this Court, in any manner approved by the United States. The terms of the purchase agreement shall include the balance of the purchase price paid in cash at closing, and shall include an earnest money deposit, in an amount to be approved by the United States, forfeitable upon the purchaser's failure to perform, and to be paid to the United States as liquidated damages.

5. The closing for the Mequon Property shall not occur until after the sale for the Property has been confirmed by further order of this Court. At closing, the purchaser or purchasers shall receive a Receiver's Deed to such purchased parcel executed by the Receiver.

6. The sale shall be subject to building lines, if established, all laws, ordinances, and governmental regulations (including building and zoning ordinances) affecting the Property and easements and restrictions of record, if any.

7. The Property shall be offered for sale "as is," with all faults and without any

3

Case 2:18-cv-00590-BHL   Filed 02/15/22   Page 3 of 7   Document 227

warranties either express or implied, and the sale(s) shall be made without any right of redemption.

8. The Clerk of the District Court is directed to accept the proceeds of the sale(s) and deposit them into the Court's interest bearing registry account and hold them until distribution is directed pursuant to further order of this Court.

9. Up until the date to vacate the respective Property (set forth in paragraph 11 below), Vladimir Gorokhovsky and all occupants of the Property, shall neither commit waste against the Property nor cause or permit anyone else to do so. In particular, Gorokhovsky shall ensure the Property is properly winterized to avoid any damage as a result from burst pipes or otherwise.

10. All of the defendants in this case shall neither do anything that tends to reduce the value or marketability of the Property nor cause or permit anyone else to do so. Such defendants shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements, posting signs, or making internet postings) that may directly or indirectly tend to adversely affect the value of the Property or that may tend to deter or discourage potential bidders from participating in the sale, nor shall they cause or permit anyone else to do so. If the Property is damaged or destroyed before its sale and Gorokhovsky is entitled to insurance proceeds, the insurance proceeds shall be made payable to the Clerk of the United States District Court for the Eastern District of Wisconsin and the Clerk of the Court is directed to accept cash and checks and deposit such items into the Court's registry for distribution pursuant to further order of this Court. Violation of this paragraph shall be deemed a contempt of court and punishable as such.

11. The Mequon Property shall be vacated permanently as follows:

>(1) All persons occupying the Mequon Property shall vacate the Property permanently within **30 days** of the date of the Court's entry of this order of sale, each taking with them his or her personal property (but leaving all improvements, buildings, fixtures, and appurtenances to the Property). If any person fails or refuses to vacate the Property by the date specified, the Receiver is authorized to coordinate with the United States Marshal to take all actions that are reasonably necessary to have those persons ejected or excluded. The U.S. Marshals Service is authorized to and directed to

take any and all necessary actions, including the use of reasonable force, to enter and remain on the premises, which includes, but is not limited to, the land, the buildings, vehicles, and any structures located thereon, for the purpose of executing this Order. The United States Marshals Service is further authorized and directed to arrest and/or evict from the premises any and all persons who obstruct, attempt to obstruct, or interfere or attempt to interfere, in any way with the execution of this Order.

(2) Any personal property remaining on the Mequon Property **30 days** after the date of the Court's entry of this order of sale is deemed forfeited and abandoned and the Receiver is authorized to dispose of it in any manner they see fit, including sale, in which case the proceeds of the sale are to be applied first to the costs and expenses of sale and the balance shall be paid into the Court for further distribution. Money orders and checks for the purchase of the personal property shall be made payable to the Clerk of the United States District Court for the Eastern District of Wisconsin and the Clerk of the Court is directed to accept cash and checks and deposit such items into the Court's registry for distribution pursuant to further order of this Court. This order of sale shall also serve as a Writ of Assistance or Writ of Possession, as appropriate, and no further order from the Court shall be required for these purposes.

12. Up until the date that this Court confirms the sales of the Property, the Receiver and their representatives are authorized to and shall have free and full access to the Property in order to take any and all actions necessary to preserve the Property, including, but not limited to, retaining a locksmith or other person to change or install locks or other security devices on any part of the Property.

13. The Receiver shall have all of the rights and powers necessary to fulfill the Receiver's obligations under this order, specifically including, but not necessarily limited to: the power to retain the services of a locksmith in order to gain access into and to secure the Property; to advertise the sale of the Property; to enter into a listing agreement, if necessary; to obtain insurance for the Property, if deemed necessary; to take any action reasonably necessary to protect and preserve the value of the Property prior to their sale; and to put the

Property into saleable condition, including making expenditures of funds that are first approved by the United States for reasonable and necessary maintenance and minor improvements.

14. The Receiver shall set an initial listing price for the Mequon Property and inform the appearing parties of that price, and may reduce the listing price as necessary in the Receiver's judgment. If the Receiver proposes to reduce the listing price the Property, he shall inform the appearing parties and, within **seven** days of being so informed, if any party that objects to the Receiver's proposed reduction may file an objection. Any non-objecting party may then file a response to the objection within seven days thereafter.

15. The Receiver, through the United States, is required to submit status/progress reports to the Court every ninety (90) days from the date of this Order until there is a final confirmation of sale.

16. The Receiver will provide a report of sales of comparable properties to the Court along with any motion for the confirmation of a sale of the Property.

17. The Receiver shall be compensated from the proceeds of the sale of the Mequon Property: (a) in an amount not to exceed six (6) percent of the gross sale proceeds to be split with the buyer's agent, and (b) reimbursed for his reasonable and necessary expenditures to protect and preserve the value of the Property that was first approved by the United States.

### Distribution of the Mequon Property Sale Proceeds

18. After the Court confirms the sale of the Mequon Property, the sale proceeds deposited with the Clerk of this Court shall be distributed in the following order of priority:

   a. *First,* to the Receiver, for the reasonable costs of the sale, costs of necessary maintenance of the Mequon Property during the pendency of a sale, and commission costs as set forth paragraph 17 above;

   b. *Second,* to outstanding property taxes, if any, due to Ozaukee County Wisconsin at the time of sale;

   c. *Third,* to satisfy Wells Fargo's interest in the Mequon Property arising out of the mortgage filed on August 16, 2005 with the Ozaukee County Register of Deeds as Document No. 0824244 with World Savings Bank for which Wells Fargo serves as a successor in interest;

   d. *Fourth,* to the United States to satisfy, in part, the balance of the federal tax liens notice of which was filed against Vladimir Gorokhovsky on July 25, 2014 at

Document No. 1005172, September 26, 2014 at Document No. 1007760, May 1, 2017 at Document No. 1048916, and nominee lien filed March 15, 2018 at Document No. 1061812 with Ozaukee County, Wisconsin and reduced to a money judgment on Count II at ECF No. 218 in the above-captioned case.

   i. The funds due to the United States shall be paid by check and made payable to "U.S. Department of Justice" and sent by regular mail to "Department of Justice, ATTN: TAXFLU, P.O. Box 310, Ben Franklin Station, Washington, D.C. 20044."

e. *Fifth,* if any proceeds remain after distribution of sale proceeds as described above, any remaining funds will be paid to WDOR for outstanding state tax warrants.

Dated at Milwaukee, Wisconsin on February 15, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge